LIU, J.,
Concurring and Dissenting.—The City of Montebello (City) sued three of its former council members and a former city administrator, claiming they violated Government Code section 1090 by voting for a waste-hauling contract in exchange for campaign contributions from the contractor. Defendants filed an anti-SLAPP motion under Code of Civil Procedure section 425.16, subdivision (b)(1) (hereafter section 425.16(b)(1)), claiming that their votes were acts in furtherance of their constitutional right to free speech. Settled law makes clear that the vote of a legislator is not protected activity under the First Amendment to the United States Constitution, and the free speech clause of the California Constitution (art. I, § 2, subd. (a)) provides no independent basis for such protection. Yet the court concludes that the anti-SLAPP statute protects the council members’ votes anyway.
Today’s decision expands the anti-SLAPP statute beyond its proper bounds, making it harder to combat public corruption in government contracting and other abuses of power. Because the anti-SLAPP statute does not cover the act of voting by an elected official, I respectfully dissent from today’s contrary holding.
Government Code section 1090, subdivision (a) states that “city officers or employees shall not be financially interested in any contract made by them in *428 their official capacity, or by any body or board of which they are members.” This statute reflects the “truism that a person cannot serve two masters simultaneously.” (Thomson v. Call (1985) 38 Cal.3d 633, 637 [214 Cal.Rptr. 139, 699 P.2d 316].) “The duties of public office demand the absolute loyalty and undivided, uncompromised allegiance of the individual that holds the office.” (People v. Honig (1996) 48 Cal.App.4th 289, 314 [55 Cal.Rptr.2d 555].) Section 1090 recognizes that “ ‘an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government.’ ” (Stigall v. City of Taft (1962) 58 Cal.2d 565, 570 [25 Cal.Rptr. 441, 375 P.2d 289], quoting U.S. v. Mississippi Valley Co. (1961) 364 U.S. 520, 549 [5 L.Ed.2d 268, 81 S.Ct. 294].)
The defendant council members, facing a lawsuit alleging that their votes on the waste-hauling contract violated Government Code section 1090, filed an anti-SLAPP motion pursuant to section 425.16(b)(1), which states: “A cause of action against a person arising from any act of that person in furtherance of the person’s right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.” The question is whether the council members’ votes were acts in furtherance of their constitutional right of free speech under section 425.16(b)(1).
In Nevada Comm ’n on Ethics v. Corrigan (2011) 564 U.S. 117 [180 L.Ed.2d 150, 131 S.Ct. 2343] (Corrigan), the United States Supreme Court held that a legislator’s vote is not an exercise of speech protected by the First Amendment. Instead, “a legislator’s vote is the commitment of his apportioned share of the legislature’s power to the passage or defeat of a particular proposal. The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it. . . . [T]he legislator casts his vote ‘as trustee for his constituents, not as a prerogative of personal power.’ In this respect, voting by a legislator is different from voting by a citizen. While ‘a voter’s franchise is a personal right,’ ‘[t]he procedures for voting in legislative assemblies . . . pertain to legislators not as individuals but as political representatives executing the legislative process.’ ” (Id. at pp. 125-126.)
Although the California Constitution’s free speech clause (Cal. Const., art. I, § 2, subd. (a)) has sometimes been interpreted more broadly than the First Amendment, “defendants make no specific argument supporting broader protection under the liberty of speech clause than under the First Amendment for votes cast by elected officials.” (Maj. opn., ante, at p. 421, fn. 11.) *429 Nothing in the language or history of California’s free speech clause suggests a concern with protecting legislative votes, and I see no reason to depart from Carrigan’s sound analysis in construing our state constitutional guarantee. The act of voting by a municipal legislator is not an exercise of the “right of petition or free speech under the United States Constitution or the California Constitution.” (§ 425.16(b)(1).)
Today’s opinion nonetheless concludes that the council members’ votes are protected activity under section 425.16(b)(1) because, in the court’s view, the statute’s language covering “any act . . . in furtherance of’ the constitutional right of petition or free speech broadens the scope of protected activities “beyond the contours of the constitutional rights themselves.” (Maj. opn., ante, at p. 421.) Code of Civil Procedure section 425.16, subdivision (e) (hereafter section 425.16(e)) defines the phrase “ ‘act in furtherance of [a constitutional] right of petition or free speech’ ” to include “(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law” and “(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.” The court says the council members’ votes fall within these definitions. (Maj. opn., ante, at p. 422.)
I do not read today’s opinion to mean that a legislator’s act of voting qualifies as a “written or oral statement or writing” under sections 425.16(e)(1) and 425.16(e)(2) simply because it involves the legislator writing or saying the word “yea” or “nay” during a legislative proceeding. If that were the case, then arguably electronic voting (pushing a button “yea” or “nay”) would fall outside the scope of this language. As the catchall category of section 425.16(e) makes clear, sections 425.16(e)(1) and 425.16(e)(2) are intended to capture types of “conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.” (§ 425.16(e)(4).) The dispositive question here is whether a legislator’s act of voting is a type of conduct in furtherance of the constitutional right of free speech.
On this question, the court says: “The council members’ participation in the meeting that preceded the vote was constitutionally protected activity. ‘[PJublic meetings, at which council members discuss matters of public interest and legislate, are conduct in furtherance of the council members’ constitutional right of free speech in connection with public issues and issues of public interest. “Under the First Amendment, legislators are ‘given the widest latitude to express their views’ and there are no ‘stricter “free speech” standards on [them] than on the general public.’ [Citation.]” [Citation.]’ [Citations.] The council member defendants’ votes were cast in furtherance of *430 their rights of advocacy and communication with their constituents on the subject of the Athens contract.” (Maj. opn., ante, at p. 423, fn. omitted.)
But this last sentence characterizing the council members’ votes runs directly counter to the reasoning in Carrigan. There the high court considered and rejected the argument that a legislator’s act of voting has an “ ‘expressive character’ ” (Carrigan, supra, 564 U.S. at p. 128) of the sort posited above: ‘“Carrigan and Justice Alito say that legislators often ‘ “us[e] their votes to express deeply held and highly unpopular views, often at great personal or political peril.” ’ [Citation.] How do they express those deeply held views, one wonders? Do ballots contain a check-one-of-the-boxes attachment that will be displayed to the public, reading something like ‘( ) I have a deeply held view about this; ( ) this is probably desirable; () this is the least of the available evils; ( ) my personal view is the other way, but my constituents want this; ( ) my personal view is the other way, but my big contributors want this; () I don’t have the slightest idea what this legislation does, but on my way in to vote the party Whip said vote ‘“aye” ’? There are, to be sure, instances where action conveys a symbolic meaning—such as the burning of a flag to convey disagreement with a country’s policies, [citation]. But the act of voting symbolizes nothing. It discloses, to be sure, that the legislator wishes (for whatever reason) that the proposition on the floor be adopted, just as a physical assault discloses that the attacker dislikes the victim. But neither the one nor the other is an act of communication. [Citation.]
“Moreover, the fact that a nonsymbolic act is the product of deeply held personal belief—even if the actor would like it to convey his deeply held personal belief—does not transform action into First Amendment speech. Nor does the fact that action may have social consequences—such as the unpopularity that cost John Quincy Adams his Senate seat resulting from his vote in favor of the Embargo Act of 1807, [citation]. However unpopular Adams’ vote may have made him, and however deeply Adams felt that his vote was the right thing to do, the act of voting was still nonsymbolic conduct engaged in for an independent governmental purpose.” (Carrigan, supra, 564 U.S. at pp. 126-127.)
Suppose a council member in this case had said before casting his vote, “I am voting for this waste-hauling contract because I believe it’s the best value for the City’s money.” What Carrigan elucidates is that while this statement has expressive value and is protected speech, the council member’s act of voting itself has no additional expressive value over and above the accompanying statement. (See Carrigan, supra, 564 U.S. at p. 127 [analogizing to Rumsfeld v. Forum for Academic and Institutional Rights, Inc. (2006) 547 U.S. 47, 66 [164 L.Ed.2d 156, 126 S.Ct. 1297], as an instance where “expressive *431 value was ‘not created by the conduct itself but by the speech that accompanies it’ ”].) As noted, “a legislator’s vote is the commitment of his apportioned share of the legislature’s power to the passage or defeat of a particular proposal”; beyond that, it “symbolizes nothing.” (Carrigan, at pp. 125-126.) A legislator’s vote therefore cannot be understood as an act “in furtherance of’ the constitutional right of free speech within the meaning of section 425.16.
The court’s contrary holding will make it harder to enforce civil laws against public corruption. “[UJnder Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees. The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to ‘chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.’ (Id., subd. (a).)” (Ketchum v. Moses (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735].) We have recognized that a fee-shifting statute that awards attorney fees to prevailing defendants carries the risk of chilling meritorious lawsuits. (Williams v. Chino Valley Independent Fire Dist. (2015) 61 Cal.4th 97, 101 [186 Cal.Rptr.3d 826, 347 P.3d 976].) Today’s extension of anti-SLAPP protections, including attorney fees for prevailing defendants, to the act of voting by legislators will potentially lead to underenforcement of Government Code section 1090 as well as other conflict of interest laws designed to ensure integrity and deter abuse of power in government decisionmaking on matters beyond public contracting. (See Gov. Code, §§ 8920, subd. (b)(5), 84308, subd. (c), 87100 et seq.)
For the reasons above, I would affirm the judgment of the Court of Appeal on the ground that the defendant council members’ votes were not protected by Code of Civil Procedure section 425.16. In all other respects, I join the opinion of the court.
Kruger, J., concurred.